Kay-Jones Furniture Company, Inc. v. Commissioner.
Kay-Jones Furniture Co. v. Commissioner
Docket Nos. 31221, 56190.
United States Tax Court
T.C. Memo 1955-235; 1955 Tax Ct. Memo LEXIS 103; 14 T.C.M. (CCH) 944; T.C.M. (RIA) 55235; August 23, 1955
*103 1. Petitioner corporation was a retail furniture dealer which made cash and installment sales. It made some sales at wholesale, most of which were at cost. Held, its realized profit is to be computed by multiplying the sum of the cash and installment sales collections (excluding wholesale sales) by the percentage of gross profits computed also by excluding wholesale sales. 2. Petitioner filed a timely corporation income and declared value excess-profits tax return for its fiscal year ended September 30, 1943, on the accrual basis. It filed an amended income tax return for such year on November 10, 1944, on which it computed its income on the installment basis. It filed income tax returns for its fiscal years ended September 30, 1944 to 1948, inclusive, on the installment basis. Held, having elected to report its income for its fiscal year ended September 30, 1943, on the accrual basis, petitioner may not revoke its original election and report its income on the installment basis by filing an amended return after the time for filing its original return had expired. 3. Held, no cause was shown excusing petitioner's failure to file an excess profits tax return for its fiscal year *104 ended September 30, 1943, and the respondent properly determined a penalty under section 291(a) of the 1939 Code for its failure to do so. 4. Held, this Court has no jurisdiction over the question of interest which petitioner paid on an assessed excess profits tax deficiency for its fiscal year ended September 30, 1943. 5. Petitioner made purchases during its fiscal year ended September 30, 1943, which were erroneously omitted from its books in that year but which were included in computing its cost of goods sold for its following fiscal year. Held, while petitioner, an accrual basis taxpayer, is entitled to include purchases made in its fiscal year ended September 30, 1943, in computing its cost of goods sold for such year, even though such purchases were included in computing its cost of goods sold in fiscal 1944, a year now barred by the statute of limitations, such purchases were not included in its closing inventory for fiscal 1943 and the adjustments therefore cancel one another. Virgil K. Sandefer, Esq., 506-7 Frank Nelson Building, Birmingham, Ala., and Eugene E. Gilmer, Esq., for the petitioner. Frederick T. Carney, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion These consolidated proceedings involve deficiencies in taxes and a penalty under section 291(a) of the 1939 Code determined by the respondent as follows: Fiscal
Year
Ended
Sec. 291(a)
Sept. 30.
Kind of Tax
Deficiency
Penalty
1943
Excess Profits
$428.35
$107.08
1946
Income
10.97
1947
Income
935.05
1948
Income
832.41
The issues to be decided are: (1) whether the petitioner may include the amount of its wholesale *106 sales in determining the amount of its realized profit on collections from cash and installment sales. If this issue is decided in favor of the respondent, it will dispose of the question of the amount of any net operating loss carry-back and carry-forward deductible by petitioner in computing its income for all the fiscal years 1943 through 1948. [1] The remaining issues are: (2) whether the petitioner, which computed its income on the accrual basis on its original return for its fiscal year ended September 30, 1943, can change its election of computing its income to the installment basis by filing an amended return for such year after the time for filing its original return had expired; (3) whether the petitioner is liable for a penalty under section 291(a) of the 1939 Code for failure to file a timely excess profits tax return for its fiscal year ended September 30, 1943; (4) whether the respondent may assess and collect interest on an excess profits tax deficiency for the fiscal year ended September 30, 1943; and (5) whether the petitioner is entitled to include in its computation of cost of goods sold for its fiscal year ended September 30, 1943, certain merchandise invoiced to *107 it in that fiscal year but which it erroneously failed to include on its books until 1944, and which it included in computing its cost of goods sold for its fiscal year ended September 30, 1944. Concessions were made by both parties with respect to other issues and will be taken into account under a Rule 50 computation. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Petitioner is an Alabama corporation engaged in the retail furniture business in the City of Birmingham. It filed its tax returns for the years in issue with the collector of internal revenue for the district of Alabama. Petitioner sold household furnishings on regular charge accounts, on the installment plan, and for cash. It also made wholesale sales. Petitioner did not maintain separate cost records on its various types of sales. Except for a negligible number, all wholesale sales were made at cost. Petitioner computed the amount of realized profit on its *108 cash and installment sales by multiplying the sum of the collections from retail cash sales, wholesale sales, and installment sales by the percentage of gross profit to total sales for the applicable year. In determining the percentage of its gross profit to total sales, petitioner included wholesale sales in its total sales and also included the cost of such wholesale sales in computing its cost of goods sold. For its fiscal year ended September 30, 1943, petitioner filed a timely corporation income tax and declared value excess-profits tax return on the accrual basis. On November 10, 1944, petitioner deposited with the collector an amended corporation return for its fiscal year ended September 30, 1943, on which its income was computed on the installment basis. On its original return for 1943, it reported excess profits net income of $9,544.81 but indicated that no excess profits tax return was being filed. On its amended return, it reported excess profits net income of $3,531.86. For the fiscal years ended September 30, 1944 to September 30, 1948, inclusive, it filed income and declared value excess-profits tax returns on the installment basis. Respondent determined an overassessment *109 in petitioner's income tax for its fiscal year ended September 30, 1943. In making his determination, the respondent computed petitioner's income on the accrual basis, as it had done on its original return. No reasonable cause appears in the record which excuses petitioner's failure to file an excess profits tax return for its fiscal year ended September 30, 1943. He determined a deficiency in excess profits tax and a penalty for failure to file an excess profits tax return for such year. In determining the deficiencies in income tax for the fiscal years ended September 30, 1946, 1947, and 1948, respondent computed the amount of petitioner's realized profit for all fiscal years from 1944 to 1948, inclusive, by excluding the amount of wholesale sales from total sales in computing the percentage of gross profit to sales. He likewise excluded collections on wholesale sales from total collections on cash and installment sales to which such percentage of gross profit is applied in computing the amount of realized profit. The parties stipulated the amount of cash collections on all retail sales. The respondent's computation of the amount of petitioner's realized profit by the exclusion *110 of wholesale sales resulted in his determination that petitioner received taxable income in 1946 rather than a net operating loss for that year and also resulted in a decrease in the amount of net operating losses for petitioner's fiscal years ended September 30, 1944 and 1945. Petitioner paid interest in the amount of $962.90 on an assessed excess profits tax deficiency for its fiscal year ended September 30, 1943. During the fiscal year ended September 30, 1943, petitioner purchased merchandise in the amount of $1,395.92, which was invoiced to it in that year but which it did not receive until the following year. Through error, the amount of such purchases was not included in its computation of cost of goods sold for 1943. The amount was entered on its books for the fiscal year ended September 30, 1944, and was included in the computation of goods sold on its return for such year. The parties stipulated the amounts of petitioner's opening and closing inventories for all of the years in issue and also stipulated that the aforementioned purchases were not entered on petitioner's books until its fiscal year ended September 30, 1944. Opinion RICE, Judge: *111 Section 44(a)[2] permits a dealer in personal property who makes installment sales to return the income from such sales as the collections therefrom are actually received. Regulations 111, section 29.44-1 provide that the amount of income realized on such collections is to be determined as follows: "* * * the income of a dealer in personal property on the installment plan may be ascertained by taking as income that proportion of the total payments received in the taxable year from installment sales * * * which the total or gross profit realized or to be realized on the total installment sales made during each year bears to the total contract price of all such sales made during that respective year. * * *" (Italics supplied.) *112 In computing the amount of income which petitioner realized on installment sales, the respondent used a composite gross profit figure; that is, he computed petitioner's percentage of gross profit on all sales (other than wholesale) rather than on just installment sales and applied such gross profit figure to collections on such sales. Petitioner maintained no detailed cost records on the various types of sales which it made. Therefore, respondent determined that petitioner's percentage of gross profit on all sales (exclusive of wholesale sales) for the year 1943 was 40.74 per cent. He then determined the amount of income realized on collections from 1943 installment sales in subsequent years by applying such gross percentage figure to such collections. Thus, in 1944, he determined that petitioner's net collections on 1943 installment sales were $15,262.62. By applying the percentage of gross profit on all 1943 sales (40.74 per cent) to such collections, he determined that petitioner's realized profit from the 1944 collections on 1943 installment sales was $6,217.99. No issue was raised with respect to the respondent's use of a composite gross profit percentage figure rather than *113 a gross profit percentage figure computed exclusively on installment sales, except insofar as such composite gross profit percentage figure did not include wholsale sales. The petitioner argues that the respondent's determination of the amount of its realized profits on installment collections each year is wrong because the percentage of gross profit for each year does not take into account its wholesale sales. It insists that in computing the percentage of gross profit to sales, wholesale sales should be included in its total sales since a profit was made on some of such wholesale sales. It also argues that the amount of cash collected on such wholesale sales should be included in total cash collections to which the percentage of gross profit is applied. The respondent, on the other had, argues that on only a negligible number of wholesale sales was there any profit mark-up and that to include such sales in total sales and the cash collections therefrom in total cash collections would result in an inaccurate computation of the amount of profit which petitioner realized in any given year. For example, the respondent determined that petitioner's gross profit on all sales (excluding *114 wholesale sales) for 1943 was 40.74 per cent. The parties agree that total retail sales in that year amounted to $70,807.15 and that the gross profit was $28,847.98. By dividing such total sales into such gross profit, the respondent arrived at his gross percentage figure of 40.74 per cent. The petitioner, on the other hand, contends that to such sales should be added $21,614.30 of wholesale sales, thus making the total sales for the year $92,421.45. It would divide that figure into the amount of gross profit to arrive at a percentage of gross profit of 31.2 per cent. It would then apply such percentage figure rather than the respondent's figure of 40.74 per cent to collections on 1943 installment sales received in all subsequent years. For the other years in issue, respondent used the same method of computation, including the fiscal years 1944 and 1945, for the purpose of determining net operating losses for those years. In support of its position, petitioner relies on our holding in Blum's, Incorporated, 7 B.T.A. 737 (1927). In that case, the Commissioner determined a composite percentage rate of profit to be applied against all cash collections whether they were *115 collections on cash sales or installment sales because the books of the taxpayer did not show the cost of goods sold for cash separate from the cost of goods sold on the installment plan. The petitioner there contended that since cash sales were generally made at a profit of 20 per cent of the selling price, which was considerably less than the profit percentage on installment sales, the composite rate should not be applied to collections on cash sales. We found that total cash sales were negligible in comparison with total installment sales and concluded that no material distortion of income would result by applying the composite percentage rate to collections from cash sales made within the year as well as to collections from installment sales, in order to determine the amount of reportable realized profit. On the basis of our holding in Blum's, Incorporated, supra, the petitioner argues that since its wholesale sales were negligible, as were the cash sales in that case, a composite percentage of gross profit to sales, arrived at by including wholesale sales in total sales, is proper in computing the amount of profit realized on all of its cash collections from both *116 retail and wholesale sales during each of the fiscal years 1943 to 1948, inclusive. Our holding in Blum's, Incorporated, supra, is not applicable to the facts here. In that case there were two classes of sales as there are here but, on both classes there, a percentage of profit was realized. Here the record shows that on only a negligible number of the wholesale sales was any profit realized. At the hearing, petitioner's vice-president testified but was unable to remember whether wholesale sales were made at cost or whether any amount of profit was reailzed thereon. In addition to being one of petitioner's officers, he also operated his own wholesale appliance business and many of the wholesale sales which petitioner made appear to have been made to his customers as a convenience when he, himself, did not have the desired merchandise on hand. Petitioner's bookkeeper of the wholesale sales. Petitioner kept no detailed cost records. In view of the fact that only a negligible number of wholesale sales appear to have been made at a profit, we think that a distortion in the computation of the amount of petitioner's realized profits would occur if it is permitted to include *117 wholesale sales in such computation. The actual difference in the parties' computation of the amount of realized profit for fiscal 1946 appears to be negligible. The respondent's computation resulted in a realized profit of $19,947.67. The petitioner's computation on brief was $19,819.54. The negligible difference in the two results is because the petitioner applied its percentage figure of gross profit (34.89%) to collections on wholesale sales in that year in addition to collections on retail sales. Thus, while it used a lower percentage figure than did respondent (36.52%), it used a larger amount of collections to which such lower percentage applied. By doing so, however, it actually is reporting a greater percentage of profit on wholesale sales than it contends it made (10%); but, on the other hand, it is reporting less profit than actually realized on retail sales. While the dollar difference in the two results mentioned is negligible and, for all that the record shows, might be so for other years, we think that the respondent's method of computation more correctly reflects the amount of profit realized by petitioner in any given year because of the fact that its wholesale sales *118 were made mostly at cost. Pursuant to our holding with respect to this issue, the parties can determine, in the Rule 50 computation, the amount of net operating loss for the fiscal years September 30, 1944 and 1945, and the amount of realized profit for the fiscal years ended September 30, 1946, 1947, and 1948. Petitioner contends that it is entitled to have its income for its fiscal year ended September 30, 1943, computed on the installment basis since it filed an amended return computing its income on that basis. It argues that the amended return supplants its election of reporting its income on the accrual basis used by it in computing its income on its original return. The respondent determined that the election which petitioner made on its original return was irrevocable. There is no showing in the record that a proper computation of petitioner's income on the accrual basis would not clearly reflect its income. Section 44(a) of the 1939 Code permits dealers in personal property, such as the petitioner, to compute their income on the installment basis if they choose to do so. We *119 think it clear, however, that when a taxpayer elects a proper method of reporting its income and so reports it on a timely return, it may not, after the time for filing the original return has expired, change the method originally elected. Pacific National Co. v. Welch, 304 U.S. 191 (1938); Elmwood Corporation v. United States, 107 Fed. (2d) 111 (C.A. 5, 1939), certiorari denied 309 U.S. 675 (1940); Ambridge Furniture Co. v. Heiner, (W.D., Pa., No. 7081, 1935). The respondent, therefore, did not err in recomputing petitioner's income for its fiscal year ended September 30, 1943, on the accrual basis. We found as a fact that no cause appeared in the record to excuse petitioner's failure to file an excess profits tax return for its fiscal year ended September 30, 1943. The respondent properly determined that a penalty under section 291(a) was applicable for failure to file such a return. It has repeatedly been held that we have no jurisdiction over questions of interest on a deficiency and we, therefore, cannot consider the issue which petitioner raised with respect to interest on a deficiency in excess profits tax for its fiscal year ended *120 September 30, 1943. American Rolbal Corporation v. Commissioner, 220 Fed. (2d) 749 (C.A. 2, 1955), affirming a memorandum opinion of this Court, Docket No. 11086, filed June 15, 1954 TCM 540, T.C. Memo. Commissioner v. Kilpatrick's Estate, 140 Fed. (2d) 887 (C.A. 6, 1944). In determining the deficiency for the fiscal year ended September 30, 1943, the respondent did not include, in computing the cost of goods sold, purchases in the amount of $1,395.92 which petitioner made in 1943 and which were invoiced to it in that year, but not received. In support of his determination, the respondent argues that the amount of those purchases was entered on petitioner's books in the following year and included in computing the cost of goods sold in such year and that to permit the deduction in the recomputation of petitioner's 1943 income would give it a double deduction. Despite the equitable considerations in respondent's favor, we think the amount in question must ordinarily be included in computing petitioner's cost of goods sold for 1943 in these proceedings even though petitioner included the sum in computing its cost of goods sold in 1944 - *121 a year not now before us. Petitioner is an accrual basis taxpayer and is required to take allowable deductions for liabilities when incurred, regardless of when paid. See United States v. Anderson, 269 U.S. 422 (1926). This question is more frequently presented to us by way of the Commissioner's disallowance of a deduction in the year before us which should properly have been taken by the taxpayer in a previous year now barred by the statute of limitations. In such instances, we have held that an accrual basis taxpayer must take a deduction in the year in which a liability is actually incurred rather than in a subsequent year when it is paid, despite the fact that it loses the benefit of the deduction because of the bar of the statute of limitations. Chas. Schaefer & Son, Inc., 20 T.C. 558 (1953). See Security Mills Co. v. Commissioner, 321 U.S. 281 (1944). The same rule is applicable here except for respondent's alternative argument that petitioner has not shown that the merchandise in question was included in its closing inventory for the fiscal year *122 ended September 30, 1943, and that if we hold that the sum in question must be added to purchases it must also be added to petitioner's closing inventory in order to accurately reflect income. This would have the effect of canceling out the sum as a cost allowance. We think the respondent's position is well taken. The petitioner attempts to meet this position, however, by arguing that the respondent stipulated the closing inventory figure for the fiscal year 1943. As heretofore noted, the parties entered into an oral stipulation that certain figures in the revenue agent's report were correct. Among such figures were the amounts of closing inventory for all of the years in issue. The parties also orally stipulated that the purchases in question, in the amount of $1,395.92, which were invoiced to petitioner in September 1943, were not entered on its books until the following taxable year. These two stipulated facts are obviously in conflict. In the absence of other proof, we do not understand how the purchases in question could have been included in petitioner's closing inventory for its fiscal year 1943 if they were not entered on its books until the following fiscal year. We think *123 that the stipulated inventory figures must be exclusive of the purchases in question. Hence, while the purchases, though deducted in a subsequent year now barred by the statute of limitations, are a proper deduction which petitioner is entitled to take in computing its cost of goods sold for its fiscal year 1943, no adjustment in such computation should be made here since it would immediately be canceled out by a corresponding adjustment to the closing inventory figure for that year to include therein the purchases in question. Decisions will be entered under Rule 50. Footnotes
1. The fiscal years 1944 and 1945 are involved only for the purpose of computing net operating losses to be used in computing taxable income for the years in issue.↩
2. SEC. 44. INSTALLMENT BASIS. (a) Dealers in Personal Property. - Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price.↩